1

2

3

4

5                 **UNITED STATES DISTRICT COURT**

6                 **EASTERN DISTRICT OF CALIFORNIA**

7

8  TIMOTHY SIMMS,                          CASE NO. 1:13-CV-2075 SMS

9          Plaintiff,                      ORDER GRANTING DEFENDANTS'
                                           MOTION FOR SUMMARY JUDGMENT
10         v.

11  DNC PARKS & RESORTS AT TENAYA,
    INC., a Delaware corporation; DELAWARE  (Doc. 22)
12  NORTH COMPANIES PARKS &
    RESORTS, INC., a Delaware Corporation;
13  DELAWARE NORTH COMPANIES,
    INCORPORATED, a Delaware Corporation;
14  and DOES 1 - 50 inclusive,

15              Defendants.

16         Defendants collectively move for summary judgment on all of Plaintiff's claims. Doc. 22.

17  Plaintiff's action arises out of his employment with Defendants and termination thereof in January

18  2012. See Doc. 1. Plaintiff alleges unlawful disability discrimination in violation of California's

19  Fair Employment and Housing Act ("FEHA") (Cal. Gov't. Code 12900, *et seq.*) and eight other

20  claims based on the allegedly unlawful termination. See Doc. 1. The parties consented to U.S.

21  magistrate judge jurisdiction. Docs. 9, 11. Before the Court are Defendants' motion, Plaintiff's

22  opposition, Defendants' reply filed under seal pursuant to a stipulated protective order, Plaintiff's

23  objections to Defendants' reply, also filed under seal, and all related attachments and exhibits.

24  Docs. 22, 30, 35, 36. The motion was taken under submission without oral argument. Doc. 39.

25  I.      SUMMARY OF RELEVANT FACTS

26         Plaintiff began work as an assistant food and beverage manager at Defendants' Tenaya

27  Lodge location on July 19, 2010. Doc. 24, Rodine Decl., Exh. 4. Throughout his employment,

28  Plaintiff reported to Sean Mangold and Travis Evans. Doc. 1, Compl. at 3:22-24. On June 23,

1   2011, Plaintiff sustained a knee injury at work, and was limited by a doctor to modified duty,

2   which prohibited walking and repetitive bending. Doc. 24, Rodine Decl., Exh. 9; Doc. 30,

3   Plaintiff's Appendix, Exh.18. On or about June 24, 2011, Plaintiff, in coordination with human

4   resources director Connie Beauregard, began focusing on the more stationary functions of his

5   position, including preparing performance reviews, scheduling, and conducting inventory. Doc. 1,

6   Complaint, ¶¶ 25, 27. Plaintiff's doctors continued to limit his work capacity to sit-down only.

7   Doc. 24, Exh. 10, 11. Plaintiff was placed on medical leave for one week around July 11 through

8   July 18, 2011. Doc. 1, ¶¶ 29, 30. Plaintiff returned to work with the same limitations. On August

9   2, 2011, Plaintiff was placed on temporary disability by his doctor. Doc. 24, Exh. 13. He requested

10  a leave of absence, and remained away from work until about September 27, 2011, when his

11  doctor released him to work with the same limitation of a sit-down job, and that he must use

12  crutches. Doc. 24, Exh. 15. At this time, Plaintiff was one of four assistant food and beverage

13  managers at the Tenaya Lodge location. See Doc. 24, Verdugo Decl, Exhs. 3-6. Between

14  September 29, 2011 and January 4, 2012, Plaintiff performed the "office-type" functions of his

15  position, while the other three assistant food and beverage managers performed the other duties.

16  Doc. 1, ¶¶ 34, 35.

17       In 2011, Defendants' "executive committee" decided to conduct layoffs due to economic

18  need. Doc. 24, Mangold Decl. at 1:6-7; Beauregard Decl. at 1:8-9; Doc. 30, Beauregard Depo at

19  46:19-25. The committee eliminated the two positions of gift shop manager and director of

20  conference services in 2011. Doc. 34, Exh. 2, Beauregard Depo at 51:4-14; Exh. 3, Mangold Depo

21  28:14-24. They also determined that they needed to eliminate a salaried position in the food and

22  beverage division, which was an assistant food and beverage manager. Doc. 34, Exh. 2 at 47:14-

23  20, 48:1-2. Soon after this determination, Ms. Beauregard ran a query through the human

24  resources management system to determine which assistant food and beverage manager was the

25  least senior. Id. at 52:9-21. Although Ms. Beauregard first believed Renee Karst was the least

26  senior, the data indicated that it was Plaintiff. Id. at 48: 3, 52:15-16. Ms. Karst had been hired by

27  Defendants to work at the Yosemite location (Curry Village) in March 2009, and was transferred

28  to the Tenaya Lodge location in May 2011.  Doc. 30, Exh. 6, Karst Decl. at 10:16-25; Doc. 24,

1    Verdugo Decl, Exh. 4. A transfer between the Yosemite and Tenaya locations would retain her

2    original date of hire. Doc. 34, Exh. 2, at 27:10-14.

3            On January 4, 2012, Ms. Beauregard and Mr. Mangold told Plaintiff that his position was

4    being eliminated and gave him a termination letter. Doc. 24, Rodine Decl. Exh. 16. In March

5    2012, Plaintiff and Ms. Beauregard had conversations about the possibility of Plaintiff returning to

6    Defendants' Tenaya location as a seasonal food and beverage manager.  Simms Depo at 59:2-59.

7    Ms. Beauregard provided more information, and Plaintiff informed her that he was interested. Id

8    59:19-25. On March 6, 2012, Plaintiff received a letter stating: "This letter is to confirm your offer

9    for the Seasonal Restaurant Manager I position at our Tenaya Lodge […]" Doc. 30, Exh. 19. The

10   letter requested Plaintiff's signature to confirm his acceptance. Id. Plaintiff provided Ms.

11   Beauregard with his physical restrictions. See Doc. 30, Exhs. 22,24.

12           In April 2012, Renee Karst left her assistant food and beverage manager position with

13   Defendants. Doc. 30, Exh. 6, Karst Depo at 10:12-12. In April or May 2012, Robert Ratchford

14   was hired as an assistant food and beverage manager. Doc. 30, Exh. 7, Wilson Depo at 24:22-25.

15   In May 2012 there were three restaurant managers. Id.

16           In or about late April 2012, Defendants determined that they would not hire a seasonal

17   food and beverage position, but open a permanent food and beverage manager position. Doc. 30,

18   Exh. 21, 22. They were reopening Plaintiff's position that was terminated in January 2012. Doc.

19   30, Exh. 22. In early May 2012, Ms. Beauregard checked if they were required to offer the

20   position to Plaintiff. Id. She told Mr. Mangold that they were so required and asked him to help

21   "getting the ball rolling on this." Doc. 30, Exh. 23. Mr. Mangold responded, "As long as he can

22   accomplish the physical duties of the job, correct?" Id. In mid-May 2012, Plaintiff emailed Ms.

23   Beauregard regarding the position, and they discussed his physical limitations and work capacity.

24   Doc. 30, Exh. 24; and see Exh. 20.

25           In December 2012, Plaintiff filed a discrimination complaint with the Department of Fair

26   Employment and Housing. Doc. 1 at 10:8-9. In March 2013, Plaintiff had surgery on his knee.

27   Doc. 30, Exh. 1, Simms Decl. at 8:1-2.

28           On April 24, 2013, Ruth Wilson, the human resources manager at the time, sent Plaintiff a

1   letter stating: "we are pleased to offer you position of food and beverage manager at Tenaya."

2   Doc. 24, Rodine Decl. Exh 17. The letter directed Plaintiff to call if interested. Id. Plaintiff

3   interviewed for the position with Ms. Wilson on May 7, 2013. Ms. Wilson was aware that

4   Plaintiff's doctor had released him to "light duty" work. Doc. 30, Exh 7, Wilson Depo. at 96:13-

5   22. Plaintiff discussed his restrictions with Ms. Wilson. Doc. 30, Exh. 1, Simms Decl. at 8:18-19.

6   Plaintiff also interviewed with Mr. Mangold, who said that whoever was hired for the position

7   would have to "work hard" and "keep up." Id. at 8:19-22. He was not offered the position. Id. at

8   8:22.

9        On July 2, 2013, Plaintiff began a new job with a different employer. Id. at 10:9. The

10  salary is higher at his new position, but other aspects of his employment with Defendants were

11  preferable to him. Id. at  10:11-11:4.

12  II.      LEGAL STANDARD

13       Summary judgment should be granted if the pleadings, the discovery and disclosure

14  materials on file, and any affidavits submitted show that there is no genuine issue as to any

15  material fact and that the movant is entitled to judgment as a matter of law. F.R.Civ.P. 56(c)(2);

16  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Fortyune v. American Multi-Cinema, Inc.*,

17  364 F.3d 1075, 1080 (9th Cir. 2004). The party seeking summary judgment bears the initial

18  burden of establishing the basis of its motion and of identifying the portions of the declarations,

19  pleadings, and discovery that demonstrate absence of a genuine issue of material fact. *Celotex*

20  *Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984

21  (9th Cir. 2007). A fact is material if it could affect the outcome of the suit under applicable law.

22  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Thrifty Oil Co. v. Bank of*

23  *America Nat'l Trust & Savings Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2003). A dispute about a

24  material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for

25  the non-moving party.  *Anderson*, 477 U.S. at 248; *Long v. County of Los Angeles*, 442 F.3d 1178,

26  1185 (9th Cir. 2006).

27       When the moving party will have the burden of proof on an issue at trial, it must

28  demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun*,

4

1    509 F.3d at 984. When the non-moving party will have the burden of proof on an issue at trial, the

2    movant may prevail by presenting evidence that negates an essential element of the non-moving

3    party's claim or merely by pointing out that no evidence supports an essential element of the non-

4    moving party's claim. *See Soremekun*, 509 F.3d at 984; *Nissan Fire and Marine Ins. Co. v. Fritz*

5    *Cos., Inc.*, 210 F.3d 1099, 1105-06 (9th Cir. 2000). If a moving party fails to carry its burden of

6    production, then "the non-moving party has no obligation to produce anything, even if the non-

7    moving party would have the ultimate burden of persuasion." *Id.* at 1102-03. If the moving party

8    meets its initial burden, the burden then shifts to the opposing party to establish that a genuine

9    issue as to any material fact actually exists. *Id.* at 1103. The opposing party cannot "'rest upon the

10   mere allegations or denials of [its] pleadings but must instead produce evidence that 'sets forth

11   specific facts showing that there is a genuine issue for trial.'" *Estate of Tucker v. Interscope*

12   *Records*, 515 F.3d 1019, 1030 (9th Cir.) *(quoting* F.R.Civ.P. 56(e)), *cert. denied*, 555 U.S. 827

13   (2008).

14        The evidence of the opposing party is to be believed, and all reasonable inferences that

15   may be drawn from the facts placed before the court must be drawn in favor of the opposing party.

16   *See Anderson*, 477 U.S. at 255; *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475

17   U.S. 574, 587 (1986); *Stegall v. Citadel Broadcasting Co.*, 350 F.3d 1061, 1065 (9th Cir. 2003).

18   Nonetheless, inferences are not drawn out of the air, and the opposing party bears the obligation of

19   producing a factual predicate from which the inference may be drawn. *See Sanders v. City of*

20   *Fresno*, 551 F.Supp.2d 1149, 1163 (E.D.Cal. 2008), *aff'd*, 340 Fed.Appx. 377 (9th Cir. 2009);

21   *UMG Recordings, Inc. v. Sinnott*, 300 F.Supp.2d 993, 997 (E.D.Cal. 2004). "A genuine issue of

22   material fact does not spring into being simply because a litigant claims that one exists or

23   promises to produce admissible evidence at trial." *del Carmen Guadelupe v. Negron Agosto*, 299

24   F.3d 15, 23 (1st Cir. 2002).

25        A court has the discretion in appropriate circumstances to consider materials that are not

26   properly brought to its attention, even though a court is not required to examine the entire file for

27   evidence establishing a genuine issue of material fact when the opposing party has not set forth the

28   evidence with adequate references.  *See Southern California Gas Co. v. City of Santa Ana*, 336

1   F.3d 885, 889 (9th Cir. 2003); *Carmen v. San Francisco Unified School District*, 237 F.3d 1026,

2   1031 (9th Cir. 2001). If the nonmoving party fails to produce evidence sufficient to create a

3   genuine issue of material fact, the moving party is entitled to summary judgment. *See Nissan Fire*

4   *& Marine*, 210 F.3d at 1103.

5       **III.    DISCUSSION**

6           A.  FEHA Disability Discrimination

7               *1.   Burden-shifting Analysis*

8           "California has adopted the three-stage burden-shifting test established by the United

9   States Supreme Court for trying claims of discrimination […] based on a theory of disparate

10  treatment." *Guz v. Bechtel National, Inc*., 24 Cal. 4th 317, 354 (2000). This test comes from

11  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and places on the plaintiff the initial

12  burden to establish a prima facie case of discrimination. T*exas Dept. of Community Affairs v.*

13  *Burdine*, 450 U.S. 248, 253-254 (1981). If the plaintiff meets this burden, a presumption of

14  discrimination arises, and the burden shifts to the employer to produce admissible evidence

15  sufficient to raise a genuine issue of fact that its action was taken for a legitimate

16  nondiscriminatory reason. *Id*. at 254-255. If the employer meets this burden, the presumption

17  disappears, and the burden shifts back to the plaintiff to show that the employer's proffered

18  reasons are pretextual. *Id*. at 256. "Whether judgment as a matter of law is appropriate in any

19  particular case will depend on a number of factors. These include the strength of the plaintiff's

20  prima facie case, the probative value of the proof that the employer's explanation is false, and any

21  other evidence that supports the employer's case […]." *Guz*, 24 Cal. 4th at 384.

22          "To establish a prima facie case of physical disability discrimination under FEHA, the

23  employee must demonstrate that he or she is disabled, is otherwise qualified to do the job, and was

24  subjected to an adverse employment action because of such disability." *Furtado v. State Personnel*

25  *Bd*., 212 Cal. App. 4th 729, 744 (Cal. App. 2013).

26          The California Supreme Court discussed the meaning of the phrase "because of" in a

27  "mixed motive" FEHA discrimination suit. *Harris v. City of Santa Monica*, 56 Cal. 4th 203, 215

28  (2013). It held that "the plaintiff must produce evidence sufficient to show that an illegitimate

1    criterion was a *substantial factor* in the particular employment decision." *Harris*, 56 Cal. 4th at

2    232 (emphasis in original). This requisite degree of causation is higher than a "motivating factor"

3    and lower than the "but for cause." *Id*. *Harris* further held:

4         When a plaintiff has shown by a preponderance of the evidence that discrimination was a
          substantial factor motivating his or her termination, the employer is entitled to demonstrate

5         that legitimate, nondiscriminatory reasons would have led it to make the same decision at
          the time. If the employer proves by a preponderance of the evidence that it would have

6         made the same decision for lawful reasons, then the plaintiff cannot be awarded damages,
          backpay, or an order of reinstatement.

7

8    *Id.* at 241.

9         Although *Harris* explicitly distinguished a "mixed motive" case from a single-motive

10   discrimination case, California courts and federal courts have adopted *Harris'* interpretation of

11   "because of" into discrimination claims that are not designated as either. *See e.g. Mendoza v.*

12   *Western Medical Center Santa Ana*, 222 Cal. App. 4th 1334, 1341 (2014); *Rope v. Auto-Chlor*

13   *System of Washington, Inc*., 220 Cal. App. 4th 635, 658 (2013); and see *Acii v. AutoZone, Inc*.,

14   2015 U.S. App. LEXIS 6346, *2, 4 (9th Cir. Cal. Apr. 17, 2015)("California's intermediate

15   appeals courts have applied *Harris* to all wrongful termination claims (both statutory and tort,

16   single and mixed motive)"); *Larkin v. Home Depot, Inc*., 2014 U.S. Dist. LEXIS 17514, *36 (N.D.

17   Cal. Dec. 18, 2014). Also, *Harris* did not affect the courts' application of the *McDonnell Douglas*

18   burden-shifting test in FEHA discrimination matters. *See e.g*., *Larkin*, 2014 U.S. Dist. LEXIS

19   17514 at *36-38; *Avina v. Target Corp*., 2014 U.S. Dist. LEXIS 101470, *9-10 (C.D. Cal. July 18,

20   2014); *Curry v. Contra Costa County*, 2014 U.S. Dist. LEXIS 60900, *26 (N.D. Cal. Apr. 30,

21   2014). Hence, in order to maintain his FEHA discrimination claim, Plaintiff must demonstrate that

22   his disability was a substantial motivating factor in the termination decision as part of his prima

23   facie case.

24        *2.   Prima Facie Case*

25        The plaintiff's prima facie burden is "not onerous," but he must still show that it is more

26   likely than not that the employer's actions were based on a prohibited discriminatory criterion.

27   *Harris*, 56 Cal. 4th at 214 (quotations and citations omitted). Plaintiff must demonstrate that he is

28   disabled, is otherwise qualified to do the job, and was subjected to an adverse employment action

1    because of such disability." *Furtado*, 212 Cal. App. 4th at 744.

2              **a.  Plaintiff was disabled**

3          As defined by FEHA, a person has a physical disability if, among other things, he has a

4    physiological condition that both affects a listed body system, including musculoskeletal, and

5    limits a major life activity. Cal. Gov't. Code § 12926(m)(1). A person may also have a physical

6    disability under FEHA if he is "regarded or treated by the employer […] as having, or having had,

7    any physical condition that makes achievement of a major life activity difficult." Cal. Gov't. Code

8    § 12926(m)(4).

9          Plaintiff had a knee condition that affected his musculoskeletal system such that he

10   required surgery, and limited his ability to walk. Defendants accommodated this condition. The

11   parties do not dispute that Plaintiff was disabled under FEHA.

12             **b.  Qualified for his position**

13         To establish that he was qualified for his position, the employee must establish that he is an

14   employee who can perform the essential functions of the job with or without reasonable

15   accommodation. *Furtado v. State Personnel Bd*., 212 Cal. App. 4th 729, 744 (2013). "Under

16   FEHA, 'reasonable accommodation' means 'a modification or adjustment to the workplace *that*

17   *enables the employee to perform the essential functions of the job held or desired*.'" *Id*. at 745.

18         Defendants argue for the first time in their reply that Plaintiff could not perform the

19   essential functions of his position as an assistant food and beverage manager. However, they kept

20   Plaintiff in his position for several months with modified duties, only eliminated him based on

21   seniority, and offered him the same position the following year. Thus, a reasonable jury could find

22   that Plaintiff was qualified for his position; hence, a triable question of material fact exists as to

23   this element.

24             **c.  Adverse employment action**

25         FEHA prohibits an employer from discharging a person from employment because of their

26   physical disability.  Cal. Gov't. Code § 12940(a).

27         Plaintiff's employment was terminated. The parties do not dispute that Plaintiff was

28   subjected to an adverse employment action.

1          **d.  Because of such disability**

2          As discussed herein, "because of such disability" means that the discrimination was a

3    substantial factor motivating the employee's termination. FEHA does not prohibit discrimination

4    "in the air;" rather, it prohibits discrimination that affects an employee's conditions of

5    employment, including discharge and refusal to hire. *Harris v. City of Santa Monica*, 56 Cal. 4th

6    203, 231 (2013). Human characteristics such as race and gender always play a role in employment

7    decisions in that employer decision makers are aware of them and might benignly comment on

8    them in a neutral fashion. *Id*. For example, "a mere reference to a lady candidate might show that

9    gender played a role in the decision, but by no means could support a rational factfinder's

10   inference that the decision was made because of sex." *Id*. (internal quotes and citations omitted).

11   *Harris* explicitly refrained from defining what facts would constitute a substantial motivating

12   factor. *Id*. at 232.

13         Here, Plaintiff has not provided any evidence of discriminatory bias such that he would

14   demonstrate that his disability was a substantial factor in the decision to terminate him. It is

15   undisputed that Defendants accommodated Plaintiff's disability for several months. Ms.

16   Beauregard testified that the decision to terminate Plaintiff was made based on his job title and

17   seniority. Her deposition testimony confirms that the decision to terminate Plaintiff began with a

18   decision to terminate one of the four assistant food and beverage managers. Then, it was decided

19   that it should be based on seniority. The data indicated that Plaintiff was the least senior of the

20   four. No evidence of discriminatory motivation is presented. In addition, Defendants continued to

21   work with Plaintiff for him to return to work after his termination, further indicating a lack of

22   discriminatory motive.

23         The only piece of evidence offered by Plaintiff related to their consideration of Plaintiff's

24   disability was during talks in 2012, after his termination, surrounding his possible return to

25   employment with Defendants. Mr. Mangold, upon being told that they needed to offer the position

26   to Plaintiff first, asked "as long as he can accomplish the physical duties of the job, correct?"

27   Plaintiff also says that Mr. Mangold told him in his 2013 interview that whoever was hired would

28   need to "keep up." These comments, constituting the entirety of Plaintiff's evidence of

1    discriminatory motivation and made after his termination, do not meet even the low burden for

2    demonstrating a prima facie case of discrimination. At this stage, Plaintiff must show that there

3    exists a triable question of fact as to whether his disability was a substantial factor in the

4    termination decision. Plaintiff has merely offered one statement indicating that Defendants were

5    aware of his disability and another which might distantly refer to his disability. Both of these

6    statements were made by Mr. Mangold, who had been his immediate supervisor, over a year after

7    the adverse action.

8        When taking the facts in the light most favorable to Plaintiff, Plaintiff still has not raised a

9    triable question of fact as to whether his disability was a significant factor motivating Defendants

10   decision to terminate his employment. Therefore, Plaintiff has not met his burden at the prima

11   facie level to allege disability discrimination in violation of FEHA. In addition, even if he had met

12   his prima facie burden, he has not raised a triable issue as to pretext. The Court will continue the

13   burden-shifting analysis.

14               *3.   Defendants' Legitimate Nondiscriminatory Reasons*

15       An employer's legitimate reasons are those that are "facially unrelated to prohibited bias"

16   *Guz v. Bechtel National, Inc*., 24 Cal.4th 317, 358 (2000). If nondiscriminatory, the employer's

17   reasons "need not necessarily have been wise or correct." *Serri v. Santa Clara University*, 226 Cal.

18   App. 4th 830, 861 (2014). "It is the employer's honest belief in the stated reasons for firing an

19   employee and not the objective truth or falsity of the underlying facts that is at issue in a

20   discrimination case." *King v. United Parcel Service, Inc*., 152 Cal.App.4th 426, 436 (2007). "[A]n

21   employer is entitled to summary judgment if, considering the employer's innocent explanation for

22   its actions, the evidence as a whole is insufficient to permit a rational inference that the employer's

23   actual motive was discriminatory." *Guz*, 24 Cal. 4th at 361. Downsizing alone is not necessarily a

24   sufficient explanation for the dismissal of a protected worker. *Id*. at 358. An employer may not use

25   the occasion of a reduction in force as a "convenient opportunity" to get rid of its protected

26   workers. *Id*.

27       Here, Defendants offer that they terminated Plaintiff's employment due to an economic

28   need. Ms. Beauregard and Mr. Mangold's deposition testimonies discuss how it was decided to

1   eliminate three positions, including one of four assistant food and beverage manager positions.

2   They then decided to eliminate the assistant food and beverage manager with the least seniority.

3   Plaintiff's name was not discussed, and Ms. Beauregard believed a different employee was the

4   least senior. The data indicated that Plaintiff had the least seniority out of the four. These reasons

5   are manifestly unrelated to intentional disability discrimination. Defendants meet their burden to

6   produce admissible evidence sufficient to raise a genuine issue of fact that its action was taken for

7   a legitimate nondiscriminatory reason. The burden shifts back to Plaintiff.

8            *4.   Pretext*

9            "[T]o avoid summary judgment [once the employer meets its initial burden], an employee

10  claiming discrimination must offer substantial evidence that the employer's stated

11  nondiscriminatory reason for the adverse action was untrue or pretextual, or evidence the

12  employer acted with a discriminatory animus, or a combination of the two, such that a reasonable

13  trier of fact could conclude the employer engaged in intentional discrimination." *Wills v. Superior*

14  *Court*, 195 Cal. App. 4th 143, 160 (2011); *Cucuzza v. City of Santa Clara*, 104 Cal.App.4th 1031,

15  1038 (2002). However, "when evidence to refute the defendant's legitimate explanation is totally

16  lacking, summary judgment is appropriate even though [the] plaintiff may have established a

17  minimal prima facie case[.]" *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 890-91 (9th Cir. 1994).

18            Proof that the employer's proffered reasons are false may suggest that the employer had

19  cause to hide its true reasons; however, the statute does not prohibit lying –there must be

20  additional evidence supporting a rational inference that intentional discrimination was the true

21  cause of the employer's actions. *Guz*, 24 Cal. 4th at 361; *Kelly v. Stamps.com Inc.*, 135 Cal. App.

22  4th 1088, 1101 (2005). "[T]he great weight of federal and California authority holds that an

23  employer is entitled to summary judgment if, considering the employer's innocent explanation for

24  its actions, the evidence as a whole is insufficient to permit a rational inference that the employer's

25  actual motive was discriminatory." *Guz*, 24 Cal. 4th at 361. "[A]n employer would be entitled to

26  judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory

27  reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to

28  whether the employer's reason was untrue and there was abundant and uncontroverted

11

1 independent evidence that no discrimination had occurred." *Reeves v. Sanderson Plumbing Prods.*,

2 530 U.S. 133, 148 (2000); *Guz*, 24 Cal. 4th at 361.

3       The California Court of Appeal described Plaintiff's burden as follows:

4 "'The [employee] cannot simply show that the employer's decision was wrong or mistaken,
since the factual dispute at issue is whether discriminatory animus motivated the employer,

5 not whether the employer is wise, shrewd, prudent, or competent. [Citations.] Rather, the
[employee] must demonstrate such weaknesses, implausibilities, inconsistencies,

6 incoherencies, or contradictions in the employer's proffered legitimate reasons for its
action that a reasonable factfinder could rationally find them "unworthy of credence,"

7 [citation], and hence infer "that the employer did not act for the [the asserted] non-
discriminatory reasons."'" (*Hersant*, *supra*, 57 Cal.App.4th at p. 1005, original italics.)

8 "Logically, disbelief of an Employer's stated reason for a termination gives rise to a

9 compelling inference that the Employer had a different, unstated motivation, but it does
not, without more, reasonably give rise to an inference that the motivation was a prohibited

10 one." (*McGrory v. Applied Signal Technology, Inc*. (2013) 212 Cal.App.4th 1510, 1531–
1532 [152 Cal. Rptr. 3d 154].)

11

12 *Serri v. Santa Clara University*, 226 Cal. App. 4th 830, 856 (2014).

13       When there is evidence that the employer lied about its motives, a single statement can

14 provide evidence of discriminatory motive when the statement can reasonably be understood to

15 refer to the employee's disability. *See Kelly v. Stamps.com Inc*., 135 Cal. App. 4th 1088, 1101

16 (2005). In *Kelly v. Stamps.com*, a pregnant employee was terminated in a reduction in force. *Id*. at

17 1099. She had a record of excellence and there was evidence that her supervisor lied to her when

18 she asked about her termination. *Id*. The court of appeal found that she had presented a triable

19 issue that the reasons given for termination were false, but she also had to provide evidence of

20 pregnancy-discriminatory motive. *Id.* at 1101. The court of appeal found that the supervisor's

21 comment that she was "checked out" could reasonably be understood as referring to her taking

22 leave, and a diversion of her attention due to her condition. *Id*.

23       Here, Plaintiff's evidence overwhelmingly relies on attacking the truth of Defendants'

24 proffered reasons without additional evidence that gives rise to an inference that their motivation

25 was discriminatory. First, Plaintiff extensively argues that Defendants were not in fact

26 experiencing economic hardship during the relevant time. Plaintiff suggests that Defendants' need

27 to hire a seasonal food and beverage manager only a few months after his termination, and their

28 eventual re-opening of his position, is evidence that they did not have a legitimate business need to

1    eliminate an assistant food and beverage manager. Plaintiff disputes that Defendants' proffered

2    financial information demonstrates sufficient economic hardship during the relevant time prior to

3    his termination. Second, Plaintiff argues that he was not the least senior of the assistant food and

4    beverage managers. He argues that Renee Karst began working at the Tenaya location after he did

5    and that it is not true that Defendants allowed her to keep her seniority date from her employment

6    at the Yosemite location because there is no such seniority policy.

7          Thus, Plaintiff argues that there are triable issues as to whether or not Defendants'

8    reduction in force was based on financial reasons and as to whether or not Plaintiff was selected

9    for discharged based on seniority. However, Plaintiff's burden to defeat this motion is not to raise

10   a triable issue as to the truth or discretion of Defendants' actions, but to raise a triable issue by

11   substantial evidence that Defendants' actual motive was discriminatory. To this extent, Plaintiff

12   also argues that pretext may be inferred from the fact that he was terminated while on modified

13   duties, that Defendants never truly offered him a position after his discharge, and that Mr.

14   Mangold made the comment, "As long as he can accomplish the physical duties of the job,

15   correct?"

16         Plaintiff's evidence is lacking. Whether Defendants' decision to lay off an assistant food

17   and beverage manager was truly financially necessary is not at issue, neither is whether he or Ms.

18   Karst was truly the least senior. The facts that Defendants opened a seasonal assistant food and

19   manager position or hired a full time assistant manager later in 2012 do not negate Defendants'

20   belief that they needed to conduct layoffs due to economic need in late 2011 and early 2012.

21   Defendants assert that they decided in this specific instance to lay off the assistant manager with

22   the least seniority, not that they have a general seniority policy with regards to lay-offs. They also

23   contend that the human resources computer program, PeopleSoft, indicated that Plaintiff had the

24   least seniority, based on Ms. Karst's Yosemite start date. If Defendants were mistaken in their

25   decision or that their decision was unwise, there is still no inference that their proffered reasons

26   are a veil for discrimination.

27         The fact that Plaintiff was terminated while on modified duties does not raise an inference

28   of discrimination. Plaintiff was terminated over six months after suffering his injury and working

13

1  in a modified capacity. The statute does not automatically create a triable discrimination action for

2  any protected employee who suffers an adverse action at any time they maintain a protected status.

3  Plaintiff's reliance on *Yartzoff v. Thomas* is improper because it describes the prima facie burden

4  in a retaliation matter, not, as is relevant here, the pretext burden in a discrimination action. *See*

5  *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987).

6        The facts surrounding Plaintiff and Defendants' discussions related to being rehired,

7  including the fact that Plaintiff was not eventually rehired and that Mr. Mangold, one of his

8  supervisors while employed with Defendants, made a statement related to plaintiff's physical

9  capacity, are also extraneous. The statute does not prohibit discrimination "in the air," but it

10  prohibits discrimination that results in an adverse employment action. Even if these facts raised an

11  inference of discriminatory animus, which would be a significant stretch, these allegations

12  occurred several months to a year after Plaintiff was discharged and do not speak to their

13  motivation for discharge. Plaintiff's evidence does not raise a triable issue in light of Defendants'

14  uncontroverted evidence that, after laying off two positions during a reduction in force, they first

15  chose to eliminate an assistant food and beverage manager, and chose to let go of the least senior

16  of the four, who was determined to be Plaintiff by computer software. The facts surrounding

17  Plaintiff's potential re-hire show that Defendants were not opposed to rehiring him with his

18  modified working capacity.

19        When taking all the evidence together in a light most favorable to Plaintiff, a reasonable

20  trier of fact could not find that Defendants' proffered reasons were pretextual or that Defendants

21  had a discriminatory animus which caused them to terminate his employment. Plaintiff has not

22  met his burden to create a triable issue of material fact in his FEHA discrimination claim.

23  Summary judgment will be granted.

24        B.  Wrongful Termination in Violation of Public Policy

25        Plaintiff's first claim is for wrongful termination in violation of public policy. The

26  elements of this claim are "(1) an employer-employee relationship, (2) the employer terminated

27  the plaintiff's employment, (3) the termination was substantially motivated by a violation of

28  public policy, and (4) the discharge caused the plaintiff harm." *Yau v. Santa Margarita Ford, Inc.*,

14

1   229 Cal. App. 4th 144, 154 (2014). Such a claim may be based on the public policies within

2   FEHA. *Billal v. Alere Health, LLC*, 2015 U.S. Dist. LEXIS 46655, *26 (C.D. Cal. Apr. 9, 2015).

3        Plaintiff's first cause of action for wrongful termination in violation of public policy rests

4   on the outcome of his second cause of action for disability discrimination in violation of FEHA. It

5   is brought under the same statute, Cal. Gov't. Code 12940(a), and based on the alleged unlawful

6   termination based on disability. Doc. 1, Complaint at ¶¶ 47, 48. Plaintiff does not offer any

7   argument that his wrongful termination claim would stand independently of his disability

8   discrimination claim, or that the requisite violation of public policy is other than discrimination in

9   violation of FEHA. Doc. 30, Opposition at 10-13. Having found that summary judgment is

10  appropriate for Plaintiff's disability discrimination claim, summary judgment will also be granted

11  on Plaintiff's wrongful termination claim.

12        C.   Failure to Provide Reasonable Accommodations

13        An employer must reasonably accommodate individuals disabled under FEHA. Cal. Gov't.

14  Code § 12940(m). An employer is only liable under section 12940(m) for failing to provide

15  reasonable accommodations if the work environment could have been modified or adjusted in a

16  manner that would have enabled the employee to perform the essential functions of the job. *Nadaf-*

17  *Rahrov v. Neiman Marcus Group, Inc.*, 166 Cal. App. 4th 952, 975 (2008).

18        Plaintiff argues in his opposition that Defendants had an ongoing duty to provide such

19  accommodations, which was violated when they terminated him. Plaintiff mistakenly relies on

20  *Humphrey v. Memorial Hospitals Association*, which states that the employer has a "continuing

21  duty" to accommodate which is "not exhausted by one effort." *Humphrey v. Mem'l Hosps. Ass'n*,

22  239 F.3d 1128, 1138 (9th Cir. 2001). However, the continuation of this duty exists "when the

23  employee asks for a different accommodation or where the employer is aware that the initial

24  accommodation is failing and further accommodation is needed." *Id*. Plaintiff does not dispute that

25  Defendants accommodated his disability for several months prior to his termination. He also does

26  not allege that he requested a different accommodation or that the initial accommodation was

27  failing.

28        Plaintiff's failure to accommodate claim does not address a different harm than his

15

1    disability discrimination claim. Rather, Plaintiff argues that "Defendants had a duty to continue to

2    accommodate Simms' disabilities, instead of unlawfully terminating his employment." Doc. 30 at

3    16:12-13. There is no obligation under FEHA for an employer to continue to employ a protected

4    individual indefinitely. Plaintiff alleges that he suffered an unlawful termination, not a failure to

5    accommodate. Plaintiff has made no allegation or provided any evidence that Defendants failed to

6    provide reasonable accommodations during his employment; hence, there is no triable issue as to

7    whether Defendants failed to provide reasonable accommodations under section 12940(m).

8    Summary judgment on this claim will be granted.

9            D.   Failure to Engage in the Interactive Process

10           Employers must engage in an informal, interactive process to determine any effective

11   accommodations for individuals disabled under FEHA. Cal. Gov't. Code § 12940(n). "While a

12   claim of failure to accommodate is independent of a cause of action for failure to engage in an

13   interactive dialogue, each necessarily implicates the other." *Gelfo v. Lockheed Martin Corp*., 140

14   Cal. App. 4th 34, 54 (2006). Where an employer actually provides an employee with a reasonable

15   accommodation, a claim for failure to engage in the interactive process is precluded. *Wilson v.*

16   *County of Orange*, 169 Cal.App.4th 1185, 1195 (2009).

17           Again Plaintiff argues that Defendants breached their duty to engage in the interactive

18   process by terminating his employment. His allegations of unlawful termination are addressed

19   above in this order. Plaintiff has not alleged or provided any evidence that Defendants failed to

20   engage in the interactive process to determine effective accommodations. Plaintiff does not

21   dispute that Defendants accommodated Plaintiff's disability during his employment. He makes no

22   allegations and provides no evidence that Defendants failed to engage in an interactive dialogue to

23   determine what accommodations he required. Summary judgment on Plaintiff's claim for failure

24   to engage in the interactive process will be granted.

25           E.   FEHA Retaliation

26           The FEHA retaliation provision prohibits an employer from discharging or otherwise

27   discriminating against any person because the person has "opposed any practices forbidden under

28   this part or because the person has filed a complaint, testified, or assisted in any proceeding under

16

1    this part." Cal. Gov't. Code § 12940(h), *Miller v. Department of Corrections*, 36 Cal. 4th 446, 472

2    (2005). Employees may establish a prima facie case of unlawful retaliation by showing that (1)

3    they engaged in activities protected by the FEHA, (2) their employers subsequently took adverse

4    employment action against them, and (3) there was a causal connection between the protected

5    activity and the adverse employment action. *Flait v. North American Watch Corp*., 3 Cal.App.4th

6    467, 476 (1992).

7         Plaintiff argues that Defendants unlawfully retaliated against him by terminating him for

8    taking medical leave and requesting reasonable accommodation at work. See Doc. 30 at 7:2-7;

9    Doc. 1 at 18:4-5. However, the retaliation provision does not protect employees from

10   discrimination, which is covered under section 12940(a), and discussed in section II.B. of this

11   order. The retaliation provision protects employees from adverse employment actions for filing a

12   complaint, or assisting in a discrimination proceeding. Plaintiff did engage in protected activity by

13   filing a discrimination complaint with DFEH in December 2012. However, Plaintiff filed his

14   complaint several months after he was discharged. Plaintiff has not sufficiently demonstrated that

15   there is a causal connection between his termination and the filing of a complaint, or any other

16   activity protected by section 12940(h). Hence, there is no a triable issue as to retaliation under

17   FEHA. Summary judgment on this claim will be granted.

18        F.   Failure to Prevent Discrimination, Harassment, and Retaliation

19        An employer must "take all reasonable steps necessary to prevent discrimination and

20   harassment from occurring." Cal. Gov't Code § 12940(k). In order to prove a violation under this

21   section, a plaintiff must show that (1) he was subjected to discrimination, harassment, or

22   retaliation; (2) defendant failed to take all reasonable steps to prevent such unlawful conduct; and

23   (3) this failure caused plaintiff to suffer injury, damage, loss or harm. *Lehane v. Boeing Co*., 2015

24   U.S. Dist. LEXIS 1664, *46 (C.D. Cal. Jan. 6, 2015), California Civil Jury Instructions 12.11.

25   "[C]ourts have required a finding of actual discrimination or harassment under FEHA before a

26   plaintiff may prevail under § 12940(k)." *Carter v. California Dept. of Veterans Affairs*, 38 Cal.4th

27   914, 925 n.4 (2006).

28        Plaintiff has not created a triable issue regarding his discrimination or retaliation claims.

17

1    He has not brought a harassment claim. Therefore, there is no triable issue regarding his failure to

2    prevent discrimination, harassment, and retaliation claim. Summary judgment on this claim will

3    also be granted.

4            G.   CFRA Retaliation

5            Under the CFRA, it is unlawful for an employer to discharge or discriminate against

6    any individual because of his exercise of the right to family care and medical leave provided by

7    the CFRA. Cal. Gov't Code § 12945.2(l). "A plaintiff can establish a prima facie case of retaliation

8    in violation of the CFRA by showing the following: (1) the defendant was a covered employer; (2)

9    the plaintiff was eligible for CFRA leave; (3) the plaintiff exercised his or her right to take a

10   qualifying leave; and (4) the plaintiff suffered an adverse employment action because he or she

11   exercised the right to take CFRA leave." *Rogers v. Cnty. of Los Angeles*, 198 Cal. App. 4th 480,

12   491 (2011). After the California Supreme Court decided *Harris v. City of Santa Monica*, discussed

13   above, the Judicial Council of California Civil Jury Instruction for CRFA retaliation was changed

14   to require that the discrimination be "a substantial motivating reason," rather than a "motivating

15   reason." *See Billal v. Alere Health, LLC*, 2015 U.S. Dist. LEXIS 46655, *24, fn.2 (C.D. Cal. Apr.

16   9, 2015); *and see* CACI 2620.

17           For the parties' clarification, the CRFA anti-retaliation provision protects employees from

18   a different harm than the FEHA anti-retaliation provision. FEHA protects employees from adverse

19   employment actions due to their opposing prohibited practices and participating in administrative

20   proceedings. The CFRA protects employees from adverse employment actions due to their taking

21   qualifying leaves of absence. Under Plaintiff's CFRA retaliation claim, Plaintiff has alleged that

22   he took CFRA leave, but he has not raised a triable issue as to whether he suffered an adverse

23   employment action *because of* his exercise to take that leave. Plaintiff has not presented any

24   evidence that his taking medical leave had any effect on or was any motivation behind his

25   termination. There is no reference that his leave of absence was any factor in Defendants' decision

26   to terminate. In addition, the *McDonnll Douglas* burden-shifting test applies to CFRA retaliation

27   violations. *Faust v. California Portland Cement Co*., 150 Cal. App. 4th 864, 885 (2007). Even if

28   Plaintiff had met his burden at the prima facie stage, the Court has already discussed that he has

1    not met his burden to create a triable issue of pretext. Summary judgment will also be granted on

2    Plaintiff's CFRA claim.

3         H.  IIED

4         "A cause of action for intentional infliction of emotional distress exists when there is (1)

5    extreme and outrageous conduct by the defendant with the intention of causing, or reckless

6    disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or

7    extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the

8    defendant's outrageous conduct." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009) (quotations and

9    citations omitted). As a matter of law, normal personnel actions such as terminating an employee,

10   even without good cause, do not constitute the type of sufficiently extreme and outrageous

11   conduct necessary to support an IIED claim. *Fowler v. Varian Assocs., Inc.* 196 Cal. App. 3d 34,

12   44 (1987).

13        IIED claims against an employer are barred by California's Worker's Compensation Act

14   when the employer's conduct is "a normal part of the employment relationship, such as

15   demotions, promotions, criticism of work practices, and frictions in negotiations as to grievances."

16   *Cole v. Fair Oaks Fire Prot. Dis*t., 43 Cal. 3d 148, 160 (1987). However, IIED claims are not

17   barred by the Worker's Compensation Act where "the distress is engendered by an employer's

18   illegal discrimination practices." *Nazir v. United Airlines, Inc*., 178 Cal. App. 4th 243, 288

19   (2009)(quotations and citations omitted).

20        Here, Plaintiff has not met his burden to raise a triable issue as to unlawful discrimination.

21   Consequently, his IIED claim is barred by the Worker's Compensation Act because the conduct of

22   which he complains is a normal part of the employment relationship. Summary judgment on

23   Plaintiff's IIED claim will be granted.

24        I.   Unfair Business Practices

25        The California unfair competition law ("UCL") prohibits "any unlawful, unfair or

26   fraudulent business act or practice." Cal. Bus. & Prof. Code, § 17200. Unlawful business practices

27   include unlawful discrimination under FEHA. *Herr v. Nestle U.S.A., Inc*., 109 Cal. App. 4th 779,

28   789 (2003). Plaintiff's UCL claim is brought on the bases of the alleged FEHA violations and

CFRA retaliation. Doc. 30 at 21:1-10. The alleged FEHA and CFRA violations are the only unlawful business practices alleged by Plaintiff. Summary judgment will be granted on all of Plaintiff's FEHA claims and his CRFA claim. Therefore, there is no triable issue as to whether Defendants are liable for unlawful business practices based on FEHA or the CFRA. Hence, summary judgment will be granted on this claim.

J.   Summary

The evidence accompanying this motion for summary judgment does not raise a genuine dispute of material fact as to disability discrimination in violation of FEHA. Defendants have established that there is no triable issue as to the causation element between Plaintiff's disability and his employment termination, and there is no triable issue as Defendants' legitimate explanation for the termination. Plaintiff's remaining claims either rely on a finding of unlawful discrimination (wrongful termination in violation of public policy, failure to prevent discrimination, harassment, and retaliation, IIED, unfair business practices), or seek redress for the same harm, but under improper titles (failure to provide reasonable accommodations, failure to engage in the interactive process, FEHA retaliation, CFRA retaliation).

Summary judgment is appropriate for all of Plaintiff's claims. Hence, the Court will not discuss each Defendants' liability or punitive damages.

IV.   ORDER

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED.

The clerk of the court is directed to enter judgment in favor of Defendants and close the case.


IT IS SO ORDERED.

Dated:   **June 24, 2015**                    **/s/ Sandra M. Snyder**
                                        UNITED STATES MAGISTRATE JUDGE

20